JOHN S. LEONARDO
United States Attorney
District of Arizona
PETER M. LANTKA
Assistant U.S. Attorney
Indiana State Bar No. 24636-71
Illinois State Bar No. 6277854
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona  85004-4408
Telephone:  (602) 514-7500
Facsimile:  (602) 514-7760
E-Mail: peter.lantka@usdoj.gov
*Attorneys for the Defendant*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Grand Canyon West Ranch LLC, | |
| Plaintiff, | **CIV-03-02496-PCT-NVW** |
| v. | **RESPONSE TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION** |
| Sally Jewell, Secretary, United States Department of Interior, *et al.*,[1] | |
| Defendant. | |

Comes now the Defendant, United States of America, and for its Response to Plaintiff's Application for Preliminary Injunction states as follows:

**I      INTRODUCTION**

Plaintiff's Renewed Application for Preliminary Injunction is very limited, only seeking a Court order "to stop all public vehicular traffic through the Right-of-Way

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Sally Jewell is substituted for Dirk Kempthorne as Secretary of the Department of Interior. Ms. Jewel was sworn in as the 51st Secretary of the Interior on April 12, 2013. *See* <http://www.doi.gov/whoweare/secretaryjewell.cfm> (accessed August 29, 2013).

granted to the United States ("U.S.") until the U.S. completes construction of the road stated in the parties' settlement agreement" (Doc. No. 177 at 1). Plaintiff further avers that, should the Court enter such an Order, it "will not seek tolls or any other compensation from the public for using the so-called old Diamond Bar Road through its property (the "Old Road") provided that a governmental agency will take responsibility for the public's use of what would otherwise be a private road on Grand Canyon Ranch's property." (Doc. No. 186). Unlike Plaintiff's first attempt to obtain a preliminary injunction, Plaintiff is not seeking a halt to construction activities on the portion of the Government's Right-of-Way across Plaintiff's property. Plaintiff now seeks a return to the status quo before Plaintiff began charging tourists an "admission fee" for passage across its property. *See* (Doc. No. 164, Findings of Fact at ¶ F).

The United States simply wants to complete the construction project contemplated by the Parties' 2007 settlement agreement and provide safe public access to the Hualapai Tribe's Skywalk. Accordingly, the Government does not object to permitting public use of Old Diamond Bar Road under the conditions set forth in Section VI, *infra*. This Response will therefore serve to counter several inaccuracies in Plaintiff's filings, provide the Court with the legal basis for the United States' ability to use the Right-of-Way across New Diamond Bar Road as it currently stands, and offer an alternative, legally viable solution to Plaintiff's current Motion should this Court be inclined to order injunctive relief.[2]

---

[2] Pursuant to LR Civ 7.1(d)(1)-(2), the attached exhibit index will direct the Court and Parties to previously filed exhibits, which are incorporated by reference herein. The Court's courtesy copy will contain actual copies of all exhibits.

## II   LEGAL STANDARD

As set forth in this Court's ruling on Plaintiff's first request for injunctive relief:

> To obtain a preliminary injunction, Plaintiff must establish: (1) that it is likely to succeed on the merits; (2) that in the absence of preliminary relief, it is likely to suffer irreparable harm; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.

(Doc. No. 164; Conclusions of Law at ¶ A), citing, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Of importance, the United States' Motion to Dismiss regarding Plaintiff's inability to obtain specific performance against the Government is still pending. (Doc. No. 131 at p.6; Doc. No. 145 at p.5). Inasmuch as it applies to the current request for specific performance, the United States respectfully requests that this Court deny Plaintiff's request on the bases stated in the Government's pending Motion.

## III   UNITED STATES' AUTHORITY TO CREATE AND USE THE "BYPASS ROAD," SAFETY MEASURES IN PLACE, AND GOVERNMENTAL LIABILITY UNDER THE FEDERAL TORT CLAIMS ACT

This Court has recognized both the Defendant's ability to create and use its "Bypass Road" as well as the scope of the Right-of-Way in which the temporary road was created. In its June 2, 2013 Order, this Court found that the Bypass Road, "fell within the meets and bounds of the easement granted to [the BIA] in the settlement agreement" and that "Plaintiff's own actions in charging an 'admission fee' for travel across its property and later in closing the road altogether led Defendants to construct the Bypass Road, and Defendants acted reasonably and were fully justified in doing so." (Doc. No. 164, Findings of Fact ¶ G; Conclusions of Law ¶ B.).

This Court's holding is supported by the plain language of the Right-of-Way, which at Page 1 permits the BIA to enter upon New Diamond Bar Road to "grade, level… and rebuild a public road, including incidental purposes therewith…." (Dft. Ex. 1 at p.1). Such incidental purposes necessarily include allowing traffic to proceed through the worksite. Indeed, the use of Old Diamond Bar Road was a luxury on this jobsite; having an alternative means through a work area such as Old Diamond Bar Road is uncommon during construction of most public roadways. *See* (Dft. Ex. 2) (Supplemental Declaration of David Smith). Had Old Diamond Bar Road not existed, the BIA would have had to use a similar "Bypass Road" within the meets and bounds of its Right-of-Way throughout construction, as BIA is doing here.

In light of this Court's Conclusions of Law and the plain language of the Right-of-Way, it is unlikely that Plaintiff will prevail on the merits in proving that Defendant had no right to build the "Bypass Road" or that allowing public use of the "Bypass Road" is beyond the scope of its Right-of-Way. To do so would require this Court to reverse its July 3, 2013 decision wholesale. Plaintiff also will fail in establishing that the "Bypass Road" is outside the scope of the Right-of-Way given this Court's Findings of Fact. (Doc. No. 164, Findings of Fact ¶ G); s*ee also*, (Dft. Ex. 7) (declaration of Joe Cano at ¶ 5) ("Fann Contracting has not exceeded the scope of the Right-of-Way.").

As to safety concerns, Plaintiff's statements are also inaccurate in alleging (1) that the BIA has abrogated its liability for accidents on the Right-of-Way and (2) that no safety precautions have been taken regarding public use of the Right-of-Way. On the first allegation, this Court has specifically held that the BIA can be held liable under the

Federal Tort Claims Act for accidents on a Right-of-Way over non-Government land. *Ben v. United States*, CV 04-1850-PCT-PGR, 2007 WL 1461626 (D. Ariz. May 16, 2007) (Rosenblatt, J.) ("The [BIA], as a holder of the right-of-way easement…owed a common law duty to keep the highway reasonably safe for travel."). Thus, in the event that an automobile accident occurs on the Right-of-Way, the driver(s)/injured motorist(s) will have redress against the United States under the FTCA; Plaintiff's business will not be ruined as its pleading alleges, because the United States – as holder of the Right-of-Way – would be the proper defendant in any resultant tort suit.

Plaintiff is also incorrect in its accusation that no traffic control plan has been implemented. Attached hereto as Dft. Ex. 3 and 4 respectively, are true and accurate copies of the Traffic Control Plan proposed by Fann Contracting and accepted by the BIA as well as photographs of traffic control and signage in and around the "Bypass Road" taken on or about June 16, 2013. *See also* (Dft. Ex. 10) (Declaration of David Gregson at ¶ 7, 8, 11) (referencing the Traffic Control Plan, Storm Water Pollution Prevention Plan, and use of flag men at the job site). Plaintiff's Motion for Preliminary Injunction therefore fails on this point as well, as Plaintiff's accusations that no traffic control measures have been taken are unsupportable.

**IV    UNITED STATES' RESPONSE TO MISCELLANEOUS ALLEGATIONS IN PLAINTIFF'S MOTION**

Plaintiff's Motion makes numerous other factual recitations which lack support, are impertinent, and are immaterial to the Government's authority to create and maintain the "Bypass Road." *See* Fed. R. Civ. P. 12(f)(1) (allowing this Court to strike such material from a pleading). The United States maintains that the following issues are irrelevant to

5

this Court's determination of the United States' use of the "Bypass Road," and addresses the same without waving its objections thereto.

### A     There is No Proof of Substantial Accidents Occurring on the Right-of-Way Through Plaintiff's Property

Plaintiff references a bus accident which occurred on or about July 3, 2013, insinuating that a similar accident could happen on the Right-of-Way. (Mot at p. 9). The bus accident referenced did not occur on the Right-of-Way and no similar accident has occurred on the Right-of-Way before or after creation of the "Bypass Road." *See* Dft. Ex. 9 (Declaration of David Gregson at ¶ 10) ("There has been no flooding in the new alignment of Diamond Bar Road in the areas in which Fann has been able to perform its earth moving and install drainage features in accordance with the project plans"); *Id.* at ¶ 13 ("To my knowledge, there have been no vehicle accidents on the new alignment of Diamond Bar Road"). The tour bus accident referenced in Plaintiff's Motion occurred on a paved road over thirty miles from New Diamond Bar Road and resulted from driver negligence – namely, a coach bus driver entering a flooded wash during a storm. *See* Jacobson, Julie, *Tour Bus Flips Over In Wash Amid Ariz. Rain Storm* (Associated Press, July 29, 2013); *see also* Dft. Ex. 10 at ¶ 14 (regarding the location of the bus accident). Plaintiff's statement is a red herring, unrelated to the road construction at issue, and fails to support its Motion to halt use of the "Bypass Road."

### B     Plaintiff's Grazing Permits; Nigel Turner's Arrest

Plaintiff also references its grazing permits, presumably arguing that it has a property right over the area encompassed by the Right-of-Way. A copy of Plaintiff's 2011 grazing permit is attached hereto as Dft. Ex. 5.

Plaintiff does not have a grazing "lease" and does not enjoy a landlord-tenant relationship with the Bureau of Land Management as inferred in its pleadings. As with other ranchers, Plaintiff's grazing permit is no more than revocable permission from the Bureau of Land Management to graze its livestock on certain public land under specific terms and conditions. The permit does not grant unfettered access to public land for any reason, and it does not permit Plaintiff to interfere with other users of public land.

Public lands are generally open and available for the public to enter, unless they have been administratively withdrawn or otherwise closed. *See generally*, *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735 (10th Cir. 2005) (addressing withdrawal of public access to land in relationship to road construction). In this situation, the Bureau of Land Management authorized the Bureau of Indian Affairs to use the public land in and around New Diamond Bar Road as a public road, which implies an ability to initiate construction without interference.

Plaintiff also proffers its grazing rights as an apparent defense to Nigel Turner's most recent arrest on or about September 3, 2013.[3] A copy of the police report pertaining to Mr. Turner's arrest was provided to the U.S. Attorney's Office by Mohave County and is attached hereto as Dft. Ex. 8. The arresting officer's rendition of facts is different than the allegations set forth in Doc. No.193.

Tribal Police have inherent sovereign power to enforce Tribal criminal laws against Indians in Indian country. *United States v. Lara*, 124 S.Ct. 1628, 1632 (2004); *Means v.*

---

[3] Assuming that the "trespass" for which Nigel Turner was arrested on or about September 3, 2013 was related to Fann Construction's construction activities and/or Tribal burial sites in and around the BIA Right-of-Way, any grazing permit-related access that Plaintiff could proffer for being present within the Right of Way would not apply because the Right-of-Way itself is obviously un-grazable.

*Navajo Nation,* 432 F.3d 924, 931 (9th Cir. 2005). Authority to enforce state laws such as trespass belongs generally to the states, not the Federal government. *Allender v. Scott,* 379 F.Supp2d 1206, 1212 (D. New Mexico 2005) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 635 (1993). The AZ POST certification authorizes Tribal officers to serve as Arizona Peace Officers enforcing Arizona law outside Indian country:

> While engaged in the conduct of his employment any Indian police officer who is appointed by the bureau of Indian affairs or the governing body of an Indian tribe as a law enforcement officer and who meets the qualifications and training standards adopted pursuant to § 41-1822 shall possess and exercise all law enforcement powers of peace officers in this state.

ARS § 13-3874(A); *see also, United States v. Smith*, 2006 WL 2990044 *2 (D.Ariz. Sept. 15, 2006) (Arizona law authorized Tribal officer to make lawful traffic stop off the reservation); *State v. Nelson,* 208 Ariz. 5, 8 (Ariz. App. 2004) (same).[4]

While Tribal Police have authority to effectuate arrests under state law pursuant A.R.S § 13-3874, and operate as law enforcement officers under the provisions of the Indian Self-Determination and Education Assistance Act, § 2 *et seq*., 25 U.S.C. § 450 *et seq*. and the Indian Law Enforcement Reform Act of 1990, § 2 *et seq*., 25 U.S.C.A. § 2801 *et seq*.; 25 C.F.R. § 12.21, commonly referred to as the Tribe's Section 638 authority, the BIA does *not* directly supervise or control the actions of Tribal police. The BIA's

---

[4] Similarly, while making this traffic stop under color of Arizona law, Tribal officers would be state actors for purposes of 42 U.S.C. § 1983. *Evans v. McKay*, 869 F.2d 1341, 1348 (9th Cir. 1989). They would not be Federal actors when making this traffic stop under a *Bivens* theory of liability. *Boney v. Valline*, 597 F.Supp.2d 1167, 1174 (D.Nev. 2009).

8

interaction with Tribal Police is that of a certifying body, not a supervisory agency that directs the actions of a separate, sovereign entity.[5]

None of Plaintiff's factual allegations have merit, but more importantly, none of the allegations relate to the substance of Plaintiff's most recent request for specific performance, which seeks an injunction against the public's use of the "Bypass Road" and reacquisition of control over Old Diamond Bar Road. The accusations should be stricken and disregarded.

## V   THE UNITED STATES CANNOT BE COMPELLED TO ASSUME LIABILITY OVER PRIVATELY HELD PROPERTY

Plaintiff's request for injunctive relief further fails on the simple fact that no court can compel the United States to assume liability over private land to which Defendants hold no title. Paragraph 6 of the Parties' Settlement Agreement states that "[t]he County, on behalf of itself and the public, and the United States, shall abandon any prior rights, easement or dedication along the existing alignment of [Old] Diamond Bar Road….upon the earlier of the completion and opening of the new road…or four (4) years from the date of the conveyances [of the Right-of-Way]." (Dft. Ex. 6 at ¶ 6). As Plaintiff has argued in earlier pleadings, under the Settlement Agreement, neither the United States nor Mohave County have access to Old Diamond Bar Road because their easements expired in or around 2011. The Defendants, therefore, cannot be held liable for accidents on Old

---

[5] Moreover, any allegations against Tribal Police, in addition to being irrelevant, cannot be adjudicated in this action. As noted in footnote 4, *supra*, the proper party must be sued – either the tribal officer directly or the Federal Government under the provisions of 28 U.S.C. § 2675.

Diamond Bar Road, much less maintain, police, and sign the road, because they have no legal claim to the land traversing Plaintiff's property in that area.

**VI     ALTERNATIVE PROPOSAL TO PLAINTIFF'S MOTION**

Without waiving the foregoing arguments, and in the alternative thereto, the United States proposes that public use of Old Diamond Bar Road can be accomplished if the Court would enter an Order requiring the following:

1. Plaintiff to grant the BIA or Mohave County a full and unencumbered "Temporary Easement" covering the portion of Old Diamond Bar Road traversing Grand Canyon Ranch that was abandoned pursuant to Paragraph 6 of the Parties' Settlement Agreement until the first lift of paving is completed on the portion of the Right-of-Way across Plaintiff's property.[6]

2. The Temporary Easement must permit the BIA or Mohave County to "regulate, warn, and inform the traveling public."

3. The BIA or Mohave County would assume liability for accidents on the Temporary Easement for which it was responsible as proscribed under the provisions of the Federal Tort Claims Act (for the BIA) or Arizona law (for the County). The BIA or Mohave County will not indemnify any negligence of the Plaintiff.

4. The BIA or Mohave County would maintain and provide for policing of the Temporary Easement for the duration outlined in bullet no. 1.

5. Plaintiff would not be permitted to charge a toll, license, or any fee whatsoever to any person, company, government, public traveler, or anyone else for the duration outlined in bullet no. 1.

6. Plaintiff would not be allowed to interfere, reschedule, restrict, or block traffic through the area covered by the Temporary Easement for the duration outlined in bullet no. 1.

Under the foregoing provisions, the responsible party – either the BIA or Mohave County, whichever entity the Court chooses to be responsible for the Temporary Easement – would have a legal right to access the Temporary Easement; regulate, warn, and inform

---

[6] The "first lift" refers to the first layer of asphalt on the Right-of-Way.

the traveling public; and assume responsibility for the results of the responsible party's negligence, if any. Plaintiff's toll, which created the need for a "Bypass Road" in the first place, would be prohibited, and the Parties could maintain the status quo that existed before the imposition of Plaintiff's toll.

## VII   BOND ISSUED PURSUANT TO FED. R. CIV. P. 65

Plaintiff's present motion for injunctive relief fails to address the issue of a bond. Rule 65(c) reads: "The court may issue a preliminary injunction or a temporary restraining order *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security." (emphasis added).

As previously stated, Plaintiff's Motion does not seek cessation of all construction activities. However, Plaintiff's Second Amended Complaint seeks such a work stoppage. (Doc. No. 195 at p.23, ¶ B). While not within the bounds of Plaintiff's current Motion, out of an abundance of caution, the United States submits the attached declarations of David Gregson (Dft. Ex. 10) and Tribal representatives Jennifer Turner and Toni Fielding, asserting the following:

Per Mr. Gregson, a conservative estimate to demobilize and remobilize Fann's construction equipment on the project is $1,625,000.00. (Dft. Ex. 10 at ¶ 18). If the Court were to order construction stopped only within the boundaries of the Right-of-Way across Plaintiff's Ranch, the cost would be approximately $332,000.00 plus remobilization costs. *Id*. at ¶ 19. In that event, even if it were ordered to stop work on the portion of the Right-

11

of-Way across Plaintiff's Ranch, Fann would still need to maintain that portion of the road to avoid degradation of the existing work by erosion and to control dust. Such efforts would cost approximately $18,930.00 per week. *Id.* at ¶ 20.

As the Court is aware, it must also consider economic damage to third parties in setting a bond pursuant to Fed. R. Civ. P. 65. *Prudential Ins. Co. of Am. v. Inlay*, 728 F. Supp. 2d 1022, 1031 (N.D. Iowa 2010) (citing *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466 (8th Cir. 1994)); *cf. Joneil Fifth Ave. Ltd. v. Ebeling & Reuss Co.*, 458 F. Supp. 1197, 1201 (S.D.N.Y. 1978) ("In making this determination, the Court must weigh the harm to plaintiff if the preliminary injunction is not granted against the harm that will accrue to defendants and third parties if it is.") (emphasis added). Accordingly, the United States again alerts the Court of the economic damage that will be suffered by the Skywalk and Hualapai Tribe if road construction were to cease. *See* (Dft. Ex. 10,11) (should road construction be stopped and not completed until 2014, Hwal'bay Ba:j, Enterprises, who operates the Skywalk, stands to lose approximately $19,942,754.62 in net profit and the Tribe approximately $3,935,642.00 in sales tax revenue).

Therefore, if this Court were to expand Plaintiff's Motion beyond the relief requested, and shut down road construction, even temporarily, the United States would require a bond in an amount in accordance with the above calculations.

**VIII  CONCLUSION**

As stated above, Plaintiff's renewed Motion for Preliminary Injunction should be denied. Plaintiff cannot establish the criteria for an injunction; and, even if the criteria could be satisfied, this Court cannot enter injunctive relief against the United States. In

the alternative, should this Court choose to prohibit public access to the "Bypass Road," the United States requests that an order be entered in accordance with the criteria set forth in Section VI, above.

Respectfully submitted this 12th day of September, 2013.

JOHN S. LEONARDO
United States Attorney
District of Arizona


s/*Peter M. Lantka*
PETER M. LANTKA
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Keith L. Hendricks
Moyes Sellers & Hendricks
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
khendricks@law-msh.com
*Attorneys for the Plaintiff*

Robert Alexander Taylor
Mohave County Attorney's Office
P.O. Box 7000
Kingman, AZ 86402-7000
*Attorneys for Defendant Mohave County*


*s/Mary C. Bangart*
U.S. Attorney's Office