# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon West Ranch LLC,<br><br>Plaintiff,<br><br>v.<br><br>Sally Jewell, Secretary, United States Department of Interior, *et al.*,<br><br>Defendants. | CV-03-02496-PCT-NVW<br><br>ORDER |

Pursuant to the Parties' representations in open Court on October 29, 2013, and upon its review of each Party's proposed order, this Court **ORDERS** the following:

A. Grand Canyon Ranch, LLC ("Ranch") is hereby ORDERED to grant the U.S. Bureau of Indian Affairs ("BIA") a full and unencumbered Temporary Easement covering the portion of Old Diamond Bar Road within the legal description at Doc. No. 258-3 pages 7-13.

B. The BIA is ORDERED to prepare the Temporary Easement and provide a copy to the Ranch for signature and return within seven days of this Order.

C. The Temporary Easement shall permit the BIA to "regulate, warn, and inform the traveling public."

D. The Temporary Easement shall expire upon resumption of public use over New Diamond Bar Road.

E. The BIA shall provide the Ranch with a minimum of forty-five (45) days advance written notice prior to allowing resumption of public use over New Diamond Bar Road. Both Parties reserve all rights to seek Court intervention regarding termination of the Temporary Easement and/or resumption of public use over New Diamond Bar Road.

F. The BIA shall convey the concerns that Mr. Turner expressed during the Parties' meeting on October 28, 2013 to the Hualapai Tribe.

G. Following recordation of the Temporary Easement in the Mohave County Recorder's Office, the BIA shall assume liability for accidents on the Temporary Easement for which it is responsible as proscribed under the provisions of the Federal Tort Claims Act. The BIA shall not be required to indemnify any negligence of the Plaintiff.

H. Upon recordation of the Temporary Easement, the BIA shall maintain and provide for policing of the Temporary Easement for the duration of the Temporary Easement as provided under paragraph D.

I. Plaintiff shall not interfere with traffic, charge any toll, license, or any other fee related to the Temporary Easement to any person, company, government or tribal entity, public traveler, tour group, or anyone else for the duration of the Temporary Easement as provided under paragraph D.

J. Upon recordation of the Temporary Easement, the Parties shall file a Notice with the Court.

Dated this 12th day of November, 2013.

_____
Neil V. Wake
United States District Judge

2

# Exhibit A

```
                    UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF ARIZONA

                    _____


Grand Canyon West Ranch, LLC, )
                              )   No. CV 03-2496-PCT-NVW
           Plaintiff,         )
                              )
     vs.                      )   Phoenix, Arizona
                              )   September 25, 2013
Sally Jewell, United States   )   9:18 a.m.
Department of Interior,       )
et al.,                       )
                              )
           Defendants.        )
_____)


        BEFORE:  THE HONORABLE NEIL V. WAKE, JUDGE


           REPORTER'S TRANSCRIPT OF PROCEEDINGS

              (Motion for Preliminary Injunction)
```

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

September 25, 2013 - Evidentiary Hearing - Motion for Preliminary Injunction

1   too long but it will be too short.  It will be a matter of
2   weeks and not a matter of years that they -- that the intent is
3   to shut this down for --
4           THE COURT:  We're going to come to that issue next.          09:43:25
5   In the meantime it ought to be doable -- I don't know what
6   we're going to do on that next issue.  I need to hear what you
7   all have to say.  But, you know, there's obvious mechanical,
8   easy mechanical procedures to deal with this, like they have to
9   give you 60 days notice before they resume using the road, or
10  30 days, something that allows you to come back to court and    09:43:55
11  say, they really haven't complied with our criteria.  For
12  purposes of making a deal now, there are a variety of
13  mechanisms that ought to be doable that could give you the
14  comfort to know that you are not just going to get ambushed,
15  that you have the opportunity to look, investigate, and come to  09:44:14
16  court if you are dissatisfied with their intended course of
17  action.
18          Any problem with that in the abstract, Mr. Lantka?
19          MR. LANTKA:  Not in the abstract.  I may have rebuttal
20  to his other arguments but not in the abstract.                  09:44:27
21          THE COURT:  Anything else before I hear from Mr.
22  Lantka?  And hopefully we can move on to the next thing.
23          MR. HENDRICKS:  The only other thing we would request
24  is the status quo be maintained until Monday when we get this
25  done for -- specifically, there has been attempts to reinitiate  09:44:41

September 25, 2013 - Evidentiary Hearing - Motion for Preliminary Injunction

1 blasting.

2 THE COURT: I'm going to deal with that next.

3 MR. HENDRICKS: If the status quo is maintained until
4 Monday, then great.

5 THE COURT: Mr. Lantka. 09:44:52

6 I'm not saying I'm agreeing to that. I'm trying to
7 help you all consummate an agreement. So go ahead, Mr. Lantka.
8 You wanted to speak to that.

9 MR. LANTKA: Only to the fact that litigation today
10 over the amenities, aside from what I believe is beyond the 09:45:13
11 scope of the preliminary injunction is --

12 THE COURT: We'll come to that.

13 Now, with respect to making the documentation on this
14 issue concerning cessation of use of the temporary road, return
15 to use of the old road, I think that's all on track so that you 09:45:30
16 can get something done by Monday. And I think I'm going to --
17 because the capacity for disagreement in this matter has been
18 so great, I'm going to just give you a default position that I
19 hope you can do better. But my default position will be if you
20 can't agree on something that is mutually more beneficial, 09:46:04
21 which you ought to be able to do, just the default position
22 will be that this -- that the government will not resume using
23 the temporary road without some reasonable notice, I'm thinking
24 at least 30 days, sufficient to allow the plaintiff to look
25 into it, and to come to court and to seek relief before there's 09:46:24

September 25, 2013 - Evidentiary Hearing - Motion for Preliminary Injunction

```
 1   a change in the status quo.  Maybe 60 days would be better.
 2           MR. LANTKA:  When you say "temporary road" you mean
 3   the new construction?
 4           THE COURT:  Correct.  Correct.
 5           So if you all can't come up with something that's                 09:46:39
 6   mutually better than that, that will be it and I will be amazed
 7   if you all can't come up with something a little more
 8   calibrated that better serves the interest of both parties.
 9           All right.  Now, let's go back to the next issue.
10   What else do you want, Mr. Hendricks?                                     09:46:57
11           MR. HENDRICKS:  The big issue, and I think that is the
12   issue we have come prepared to talk with, is that they have
13   installed one underpass.  It is non-compliant.  It is -- and we
14   could show you the picture.  You look at it and you can just
15   understand why it is non-compliant.  They intend to install              09:47:16
16   those in the two other locations that drainage has been set so
17   it will concentrate the flows into our property.  And those
18   issues need to be resolved before pavement.
19           THE COURT:  I understand from Mr. Peterson's affidavit
20   that it kind of says what I always thought in this case, is             09:47:35
21   once you finish the construction, retrofitting is going to be
22   totally unfeasible or extremely expensive.
23           So now, Mr. Lantka argues that that really isn't
24   properly before me.  And in my re-reading of the briefs and the
25   original motion you filed last month, about a month ago, your           09:47:57
```

# CERTIFICATE

I, LAURIE A. ADAMS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 30th day of September, 2012.

s/Laurie A. Adams
_____
Laurie A. Adams, RMR, CRR

# Exhibit B

# Cooperative Agreement
## Between
## Bureau of Indian Affairs
## and
## Mohave County

I. INTRODUCTION AND PURPOSE

This Cooperative Agreement is made and entered into between the United States Government acting through the Bureau of Indian Affairs (BIA) and Mohave County, Arizona.

This agreement is authorized by 23 U.S.C. 202 & 204 which allows for cooperation with states/counties for Federal Lands Highways roads improvements.

The BIA in response to Hualapai Tribal Resolution No. 55-91, proposes to construct Diamond Bar Road to provide improved access to the Grand Canyon West Development on the Hualapai Indian Reservation.

The purpose of this agreement is to foster federal/county cooperation in the construction of 13.5 miles of Diamond Bar Road. Diamond Bar Road, which is under Mohave County's jurisdiction, begins at the Pearce Ferry Road and extends northeasterly to the Hualapai Indian Reservation Boundary.

II. EFFECTIVE DATE

This agreement shall take affect upon signature by the Mohave County Official and the BIA Representative. It shall remain in full force and effect until the work is completed in accordance with this agreement.

III. MUTUAL COOPERATION

A. Bureau of Indian Affairs Agrees to:

1. Develop Environmental Impact Statement for proposed construction.

2. Obtain necessary rights-of-way from Bureau of Land Management (BLM) and land owners where no right-of-way exists.

3. Design and construct Diamond Bar Road to a 24 foot wide bituminous surfaced roadway with a design speed of 25 to 45 mph, in accordance with AASHTO standards (1990 edition).

4. Submit preliminary design and final design plans and specifications to Mohave County and the BLM for review and approval.

5. Provide traffic control signing and pavement markings in accordance with the Federal Highway Administration Manual on Uniform Traffic Control Devices (MUTCD).

6. Upon completion of construction, transfer right-of-way to Mohave County.

B. Mohave County Agrees to:

1. Authorize the BIA to construct within the existing county right-of-way.

2. Continue maintenance of the existing roadway while it is in use.

3. ~~Participate in the construction of Diamond Bar Road as funds become available.~~ [struck through, initialed AB 3/29/96, BW 3/12/96]

3./4. Upon completion of construction, accept the right-of-way and maintenance responsibility of the newly constructed right-of-way.

IV. AMENDMENTS

Each party to this Cooperative Agreement may initiate necessary modifications or amendments.

V. TERMINATION OF COOPERATIVE AGREEMENT

Each party to this Cooperative Agreement may terminate its participation after 30 days prior notice to the other party. During the intervening 30 days, the parties agree to actively attempt to resolve any outstanding disputes or disagreements.

APPROVED BY THE BUREAU OF INDIAN AFFAIRS

_____     12-29-95
Walt Mills, Phoenix Area Director    DATE

APPROVED BY MOHAVE COUNTY

_____     3/29/96
                                   DATE

# MOHAVE COUNTY PUBLIC WORKS

3675 E. Andy Devine Avenue, Suite C
P.O. Box 7000    KINGMAN, ARIZONA 86402-7000
TELEPHONE (520) 757-0910    FAX (520) 757-0912    TDD 753-0726

| Richard A. Skalicky, P.E. | M. P. Hendrix, P.E. | Asst. Co. Engineer | Flood Control | County Surveyor | Improvement Districts |
|---|---|---|---|---|---|
| Director/County Engineer | Asst. Director | B. M. Elters, P.E. | K. Budhecha, P.E. | D. W. Walker, R.L.S. | Z. Wright |

April 24, 1996

Mr. Dave Smith
Bureau of Indian Affairs
Phoenix Area Office
Branch of Roads
P.O. Box 10
Phoenix, Arizona 85001

Re: Design Specifications for Diamond Bar Road (aka Grapevine Road)

Dear Mr. Smith:

    Per our conversation on April 22, 1996, the recommendation for design specification for the above referenced road is attached. Diamond Bar Road would be considered a County Highway and design speed may vary between 40-60 miles per hour according to the Mohave County Specifications. If you wish to design to lesser standards and specifications, a variance approval from the Mohave County Board of Supervisors would be required.

    If you have any questions, please feel free to contact me.

Sincerely,

Bassam Elters

Bassam Elters, P.E.
Assistant County Engineer



BE/pl

| Facilities | Emergency Services | Landfills | Roads | Parks Department | Equipment/Vehicle |
|---|---|---|---|---|---|
| Management | J. D. Hill | M. Hendrix | M. Esquibel | T. Brady | Maintenance |
| J. Jeffers | | | | | C. L. Key |

## MINIMUM STANDARDS for NON-CURB ROADWAY DESIGN

PAGE 7 OF 9
BK 1985 PG 22 (FEE#91-67637)

| | ITEM | A | B | C | D | E | DESIGN SPEED |
|---|---|---|---|---|---|---|---|
| CLASSIFICATION | COUNTY HIGHWAY | 100' | 12' | 8' | 4' | 3:1 | 40-60 |
| | ARTERIALS | 84' | 12' | 8' | 4' | 3:1 | 40-50 |
| | COLLECTORS/DISTRIBUTORS | 70' | 12' | 8' | 4' | 3:1 | 30-40 |
| | LOCAL | 50' | 12' | 8' | — | 3:1 | 30 |
| | CUL-de-SAC'S | 50' | 12' | 8' | — | 3:1 | 25 |
| | HILLSIDE/FRONTAGE | 50' | 12' | 2' | — | 3:1 | 30 |

Roadway classification to be approved by the County Engineer

Design speed shall be the maximum speed shown unless documentation is submitted to and is approved by the County Engineer for a lesser design speed.

Roadway Design shall conform to the standards outlined in the current edition of the AASHTO Policy on Geometric Design of Highways and Streets.

All right-of-way widths shown are minimums. Final design may require additional right-of-way. For Subdivisions recorded prior to Sept. 7, 1965 the minimum width shall be 40 feet, when a request for maintenance is being considered.

The 10-year design storm must be contained within the improved ditch section removed from the shoulder. The 100-year design storm can not overtop the centerline of the road.

## EXHIBIT "A"

THIS STANDARD DETAIL REPLACES STANDARD DETAIL 60 THRU 63, DATED MAY, 1976

| MINIMUM STANDARDS for NON-CURB ROADWAY DESIGN | UNIFORM STANDARD DETAILS MOHAVE COUNTY AREA Prepared By: MOHAVE COUNTY ENGINEERING |
|---|---|